## Keasbey Estate

298

*Otto P. Mann* and *Morgan, Lewis & Bockius,* for accountant.

*John Russell, Jr., J. Tyson Stokes, Samuel S. Logan, Jr., Montgomery, McCracken, Walker & Rhoads, George B. Ross,* and *Barnes, Dechert, Price, Myers & Rhoads,* for claimants.

*Lois G. Forer,* for Commonwealth.

SAYLOR, J., November 30, 1961.—This trust arises under the inter vivos deed dated January 16, 1929, by which Henry G. Keasbey, the settlor, transferred the fund now accounted for to his trustee upon terms which are set forth in the statement of proposed distribution and in a prior adjudication and need not be repeated here.

The account has been filed because of the death of Marguerite Anna Keasbey, the last surviving life ten-

ant, on June 29, 1960, in consequence of which the trust has terminated in accordance with its provisions.

### 1. Direction to Accumulate

By the deed settlor directed that stock dividends and proceeds of sale of rights to subscribe be added to principal. Accountant gave due notice to the parties in interest that it would be submitted to the court that this direction to accumulate was illegal when the trust deed was executed to the extent that such stock dividends and proceeds of sale of rights to subscribe represented income distributable to the income beneficiaries. No objection to this conclusion was made at the audit, and awards will, be made in accordance therewith.

### 2. Apportionment Distribution Heretofore Made

Accountant has made apportionments in some instances under the law existing before Catherwood Trust, 405 Pa. 61 (1961), and has made actual distribution on the basis of such apportionment. At the audit counsel for accountant requested the court to approve such prior apportionment distributions. While on this point the notice of the audit is not as clear as it might be, it does in substance give notice that such request will be made to the court. No objection was made at the audit to the distribution proposed, and awards will be made in accordance therewith.

The Supreme Court in Catherwood Trust expressly declared that distributions which had been made in reliance on the prior law were not affected by the Catherwood decision. (405 Pa. at 77).

### 3. Apportionment Distributions Not Yet Made

Accountant has received and has retained as principal, without making any apportionment or distribution, various stock dividends, stock acquired by the exercise of stock rights, and gains on sales of stocks

and stock subscription rights. Apportionment is now sought by the personal representatives of the estates of two deceased life tenants on the basis of the law in effect prior to the Catherwood decision. The basis on which it is sought to avoid that decision is that since the pending account was listed for audit before that decision was rendered but continued until after that decision was rendered upon the request of one of the remaindermen, it would be inequitable to apply that decision to the detriment of the life tenants, who would thereby be denied the apportioned income to which they would have been entitled under the prior law.

The account was originally listed for audit on the regular audit list of June 1961 and was then set for June 12, 1961. At the request of one of the remaindermen the audit of the account was continued until the October 1961 deferred list and was held on October 9, 1961. The filing of an adjudication was delayed to afford opportunity to effect a compromise of the matter in controversy and, this failing, to permit counsel to file briefs.

The record does not show the basis for the request for continuance, but it is recalled that counsel for the remaindermen stated that it was desired to await the decision in Catherwood Trust. This recollection is confirmed by a letter dated June 9, 1961, written by a member of the firm of counsel for the estates of the life tenants. The letter is attached hereto and made part of the record.

It is claimed by counsel for the estates of the life tenants that the present account should not be regarded as pending, and therefore as not governed by Catherwood Trust. It is claimed by him that as equity regards as done that which should be done, the court should regard the account as having been audited on June 12, 1961, the date when it was originally listed for

audit, and that in consequence it was not pending at the later date when Catherwood Trust was decided. The fiction of regarding as done that which should be done cannot be applied, because in the first instance it is applicable only when there is a legal or enforceable duty resting upon one person which he should perform with respect to another person. Counsel has not cited any case in which the fiction has been extended to such a procedural matter as the date on which a matter is to be heard. While attorneys have a duty to appear in court when a case is to be heard, there is no legal obligation as between the parties, in the right versus duty sense, that the case be heard on that day, particularly when the case is postponed with the approval of the court.

The practical and more direct answer is that the account was in fact pending before the court at the date the Catherwood decision was rendered. While counsel has not cited any authority as to when a matter is pending in the orphans' court, there is authority that other forms of actions and proceedings are pending from the moment of initiation until the rendition of the final judgment of the court. Prudential Insurance Co. v. Himelfarb, 362 Pa. 123 (1949) (equity action); Howell v. Franke, 393 Pa. 440 (1958) (equity action); Robinson Township School District v. Houghton, 387 Pa. 236 (1956) (declaratory judgment proceeding). An account when listed for audit is certainly before the court and until an adjudication is filed thereon it is necessarily pending in the court.

It is urged that this court should be moved by equitable considerations. Conceding this to be so, one of the considerations that influence a court of equity is that it will aid only the vigilant. In the instant case the two life tenants, on behalf of whose estates apportionments are now requested, died, respectively, in 1953 and 1960.

During their lifetimes they made no demand for an apportionment. Likewise, the personal representative of the life tenant dying in 1953 has not made any demand for an apportionment prior to the current demand. After such long delay an appeal to the equitable nature of the court loses much of its merit. It is also to be noted that those seeking an apportionment are merely donees and, moreover, are not themselves the life tenants who, within the familiar phraseology, may be regarded as the prime objects of decedent's bounty.

It is further urged that as it was the request of one of the remaindermen which delayed the audit of the account past the date of the Catherwood decision, it would be inequitable to apply that decision to the pending account. A minor consideration is that as all of the remaindermen did not request the continuance, the sustaining of this argument would penalize those remaindermen who did not request the continuance. The major consideration, however, is that the estates of the life tenants were represented by counsel of long recognized ability. As he did not object to the continuance, he necessarily accepted the possibility that a change of law might occur which would work to the detriment of the estates of the life tenants. It may also be stated that whether he objected to the continuance or not the court could have continued the case awaiting the decision in the Catherwood Trust, and to that extent all parties in interest would have been subjected to the normal hazard of litigation, namely, that the light might change during the course of the litigation prior to the rendition of a final decision therein. The fact that the audit was continued at the request of one of the remaindermen is therefore not a basis for avoiding the application of the decision in Catherwood Trust.

With respect to the stock dividends, stocks acquired through the exercise of stock rights, and gains on sales

of stocks and stock rights which have been carried by accountant as principal, distribution is governed by the provisions of the Principal and Income Act of July 3, 1947, P. L. 1283 . . .

And now, November 30, 1961, the account is confirmed nisi.